**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE: ) | Case No. 6:10-bk-03801 |
| Thomas E Lugen and Judy L Lugen, ) | |
| DEBTOR ) | |
| ) | |

FILED VIA MAIL
SEP 16 2015
CLERK U.S. BANKRUPTCY
ORLANDO DIVISION

**APPLICATION FOR ORDER DIRECTING PAYMENT OF FUNDS TO CREDITOR/CLAIMANT PURSUANT TO 11 U.S.C. SECTION 347 AND 28 U.S.C. SECTIONS 2041 ET. SEQ.**

PNC Bank, National Association successor to National City Bank (the "Claimant") a claimant in the captioned case has a current address and telephone number as follows: Telephone number: 215-585-6351, Attn: David L.Zive, 1600 Market Street, 28th Floor, Philadelphia, PA 19103.

Claimant respectfully requests as follows:

1. Claimant was a creditor of the Debtor and was due to receive and the trustee did, in fact, make a distribution from the estate to the Claimant in the amount of approximately $4,344.36. The Claimant was not located and the funds of the Claimant were paid into the Court pursuant to 11 U.S.C. § 347. PNC Bank, National Association is the successor by merger to National City Bank. This acquisition and merger is evidenced by the attached PNC certificate which includes a copy of certification of the merger by the Comptroller of the Currency. Also attached are excerpts of the SEC filings reflecting The PNC Financial Services Group, Inc.'s acquisition/merger of National City Corporation of which National City Bank was a subsidiary.

2. Pursuant to 11 U.S.C. § 347 and chapter 129 of title 28, United States Code, the Claimant requests that the Court issue an order directing payment to the Claimant and that payment be made in care of the party set forth below.

WHEREFORE, Claimant requests that the Court issue an order directing payment of all funds held by the Court for the Claimant in this case and for such further and other relief as is just and appropriate.

PNC Bank, National Association successor to National City Bank
FID#/SSN: 22-1146430

By: _____
Larry Stockmyer
Vice President
PNC Bank, National Association
1600 Market Street, 28th Floor
Philadelphia, PA 19103
(215) 585-6351

## CERTIFICATE OF MAILING

I hereby certify that on ~~August~~ Sept 9, 2015, I have mailed a true and correct copy of the foregoing APPLICATION FOR ORDER DIRECTING PAYMENT OF FUNDS TO CREDITOR/CLAIMANT PURSUANT TO 11 U.S.C. SECTION 347 AND 28 U.S.C. SECTIONS 2041 ET. SEQ. to:

United States Attorney
Attn: Civil Process Clerk
400 N. Tampa Street, Suite 3200
Tampa, FL  33602-4708

*/s/ Larry Stockmyer*
Larry Stockmyer



**Larry W. Stockmyer**
Assistant Vice President, Asset Resolution Team
T 937-910-2467  T 877-515-6262 Ext 937-910-2467
larry.stockmyer@pnc.com   F 855-205-8898

**The PNC Financial Services Group**
3232 Newmark Drive  B6-YM15-01-6
Miamisburg Ohio 45342-5421





### CERTIFICATE

The undersigned, Janet L. Deringer, a duly appointed Assistant Secretary of PNC Bank, National Association (the "Bank"), does hereby certify that:

(1)    the following is a true and correct copy of an excerpt from the By-Laws of the Bank and a true and correct copy of Resolutions adopted by the Board of Directors of the Bank on April 22, 2014;

(2)    the excerpt from the By-Laws of the Bank and Resolutions described above are in full force and effect as of the date of this Certificate; and

(3)    Larry W. Stockmyer is a duly appointed Vice President of the Bank.

*Excerpt from By-Laws of PNC Bank, National Association*

"Article VI.  General Powers of Officers

Section 1.  The corporate seal of the Bank may be imprinted or affixed by any process. The Secretary and any other officers authorized by resolution of the Board of Directors shall have authority to affix and attest the corporate seal of the Bank.

Section 2.  The authority of officers and employees of this Bank to execute documents and instruments on its behalf in cases not specifically provided for in these By-Laws shall be as determined from time to time by the Board of Directors, or, in the case of employees, by officers in accordance with authority given them by the Board of Directors."

*Board Resolutions Adopted April 22, 2014*

NOW, THEREFORE, BE IT RESOLVED, that the Chairman of the Board, the Chief Executive Officer, the President, each Senior Vice Chairman, each Vice Chairman, each Executive Vice President, each Senior Vice President, each Vice President, each Assistant Vice President, the Treasurer and each Assistant Treasurer, the Cashier and each Assistant Cashier, the Secretary and each Assistant Secretary, each Trust Officer and Assistant Trust Officer, each Chief Investment Officer, each Regional President or chief executive of a business region, the General Counsel, the Senior Deputy General Counsel, each Deputy General Counsel and each Chief Counsel (the "Authorizing Officers") of PNC Bank, National Association (the "Bank") shall have the authority to affix and attest the seal of the Bank;

RESOLVED FURTHER, that the Authorizing Officers of the Bank, and any other officers acting at the discretion of any officer authorized to affix and attest the seal of the Bank, are and each of them is hereby authorized and empowered in the name and on behalf of the Bank to execute, acknowledge and deliver any and all agreements, instruments, or other documents relating to the property or rights of all kinds held or owned by the Bank or to the operation of the Bank, either for its own account or in any agency or fiduciary capacity. Notwithstanding the foregoing, any and all agreements of sale, contracts, deeds and other documentation pertaining to the purchase, sale or transfer of real estate or buildings occupied by the Bank in the transaction of its business shall be executed in accordance with the terms of resolutions adopted from time to time in connection therewith and specifically designating the officer or officers authorized to execute the same;

RESOLVED FURTHER, that the Bank's Chairman of the Board, Chief Executive Officer, President, Secretary, or any Senior Vice Chairman, Vice Chairman, or Executive Vice President or any of them, is authorized to name, constitute and appoint such person or persons as they or any of them deem necessary as attorney-in-fact for the Bank, to execute documents for and in its name and stead, and to perform all other acts, deeds and things as may be required to effect the particular transactions for which the appointment is made;

RESOLVED FURTHER, that the Bank's Chairman of the Board, Chief Executive Officer, President, Secretary, or any Senior Vice Chairman, Vice Chairman, or Executive Vice President or any of them, is authorized to name, constitute and appoint such person or persons employed by the Corporation or any of its wholly owned direct or indirect subsidiaries as they or any of them deem necessary as attorney-in-fact for the Bank, to execute documents for and in its name and stead, and to perform all other acts, deeds and things as may be required to effect the particular transactions for which the appointment is made;

RESOLVED FURTHER, that any officer of the Bank and any non-officer employee of the Corporation or the Bank (or any affiliate of the Corporation or Bank) designated in writing by the Chief Executive Officer, the President, any Senior Vice Chairman, Vice Chairman, Executive Vice President or Senior Vice President of the Corporation or Bank, are each hereby authorized and empowered:

(a) To sign or countersign checks, drafts, acceptances, guarantees of signatures on assignments of securities, certificates of securities of entities for whom the Bank is acting as registrar or transfer agent or in a fiduciary or representative capacity, correspondence or other papers or documents not ordinarily requiring execution under seal;

(b) To receive any sums of money or property due or owing to the Bank in its own right, as an agent for another party, or in any fiduciary or representative capacity and, either as attorney-in-fact for the Bank or otherwise, to sign or countersign agreements, instruments, or other documents related to the foreclosure of residential real estate loans owned or serviced by the Corporation or the Bank or the enforcement of any other rights and remedies with respect to such loans (including, without limitation, in a bankruptcy or insolvency proceeding), including, without limitation, correspondence, affidavits, certifications, declarations, deeds, substitutions of trustee, verifications, assignments, powers of attorney, sales contracts or any other papers or documents, to execute any instrument of satisfaction for any mortgage, deed of trust, judgment or lien in the Office of the Recorder of Deeds, Prothonotary, or other office or court of record in any jurisdiction, provided, however, that in respect to any mortgage or deed of trust made to this Bank as trustee for bondholders, the foregoing authority shall be exercised only pursuant to an authorization of the Board of Directors or committee of the Board of Directors with oversight of fiduciary risk;

<u>General</u>

RESOLVED FURTHER, that the Authorized Officers of the Bank, and each of them, are authorized to do any and all things and to take any and all actions in connection with these resolutions, including, but not limited to, the execution, delivery, acknowledgement, submitting, filing, recording and sealing of all documents, certificates, statements or other instruments, and the making of any expenditures, which such officers may deem necessary or advisable in order to carry out the intent and purposes of these resolutions;

RESOLVED FURTHER, that all actions heretofore taken by any of the officers, representatives or agents of the Bank, by or on behalf of the Bank or any of its affiliates in connection with the foregoing resolutions be, and each of the same is, ratified and approved; and

RESOLVED FURTHER, that for purposes of the foregoing resolutions, the term "Authorized Officer" shall mean and include, as applicable, the Chairman, Chief Executive Officer, President, Senior Vice Chairman, Chief Financial Officer, Secretary or Treasurer of the Bank, or any Vice Chairman, Executive Vice President, Senior Vice President, Vice President, Assistant Secretary or Assistant Treasurer of the Bank or any other duly appointed officer of the Bank.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of the Association this 14th day of April, 2015.

*Janet L. Deringer*

[PNC BANK NATIONAL ASSOCIATION SEAL]



### CERTIFICATE

The undersigned, Ruby G. Altizer, Assistant Secretary of PNC Bank, National Association, does hereby certify as follows:

1. Effective as of December 31, 2008, National City Corporation, a Delaware corporation, merged (the "Merger") with and into The PNC Financial Services Group, Inc., a Pennsylvania corporation ("PNC Financial"), and National City Bank became a wholly owned subsidiary of PNC Financial.

2. Immediately prior to the Merger, National City Bank was a wholly owned subsidiary of National City Corporation.

3. Effective as of November 6, 2009, National City Bank merged with and into PNC Bank, National Association, pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A").

4. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

5. PNC Bank, National Association is a wholly owned subsidiary of PNC Bancorp, Inc., a Delaware corporation, and PNC Bancorp, Inc. is a wholly owned subsidiary of PNC Financial.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Association this 29th day of April, 2014.

_____
Ruby G. Altizer



EXHIBIT A



Comptroller of the Currency
Administrator of National Banks

Northeastern District Office
340 Madison Avenue, 5th Floor
New York, New York 10173-0002

Licensing Division
Telephone: (212)790-4055
Fax: (301) 333-7015

November 6, 2009

James S. Keller
Chief Regulatory Counsel
The PNC Financial Services Group, Inc.
249 Fifth Avenue
One PNC Plaza, 21st Floor
Pittsburgh, Pennsylvania 15222-2707

Re: Application to merge National City Bank, Cleveland, Ohio, with and into PNC Bank, National Association, Wilmington, Delaware under the charter and title of the latter.
Control No: 2009 NE 02 0017     Charter No: 1316

Dear Mr. Keller:

This letter is the official certification of the Comptroller of the Currency to merge National City Bank, Cleveland, Ohio ("NCB"), with and into PNC Bank, National Association, Wilmington, Delaware ("PNC Bank"), effective as of close of business on November 6, 2009. The resulting bank's title is PNC Bank, National Association, charter number 1316.

This is also the official authorization given to PNC Bank, the resulting bank, to operate branches of NCB as branches of the resulting bank. Branches of a national bank target are automatically carried over to the resulting bank and retain their current OCC branch numbers.

We understand that upon consummation, the capital surplus of PNC Bank will increase. Within 30 days following consummation, please provide this office with the exact dollar amount of the capital change so that we may issue our letter certificating the capital increase.

If the combination does not occur as represented in your letter of October 26, 2009, this certification must be returned to the OCC. Following consummation of the merger, please return the charter certificate for NCB so that we may properly close our files for this bank.

Sincerely,

Sandya Reddy
Acting Director for District Licensing

8-K12B 1 y73625ke8vk12b.htm FORM 8-K

---

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

---

# FORM 8-K

## CURRENT REPORT
Pursuant to Section 13 or 15(d) of The Securities Exchange Act of 1934

December 26, 2008
Date of Report (Date of earliest event reported)

---

# THE PNC FINANCIAL SERVICES GROUP, INC.

(Exact name of registrant as specified in its charter)

---

Commission File Number 001-09718

| | |
|---|---|
| Pennsylvania | 25-1435979 |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

One PNC Plaza
249 Fifth Avenue
Pittsburgh, Pennsylvania 15222-2707
(Address of principal executive offices, including zip code)

(412) 762-2000
(Registrant's telephone number, including area code)

Not Applicable
(Former name or former address, if changed since last report)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 2.01. Completion of Acquisition or Disposition of Assets.**

On December 31, 2008 at 11:00 a.m., Eastern time, pursuant to the terms and conditions of the Agreement and Plan of Merger, dated as of October 24, 2008 (the "Merger Agreement"), by and between The PNC Financial Services Group, Inc. ("PNC") and National City Corporation ("National City"), PNC and National City completed the merger (the "Merger") in which National City merged with and into PNC, with PNC continuing as the surviving corporation. Pursuant to the terms of the Merger Agreement, each outstanding share of National City common stock was converted into the right to receive 0.0392 of a share PNC common stock. In addition, each option to acquire shares of National City common stock and other equity-based award that was outstanding and unexercised immediately prior to the effective time was converted into an option or other equity-based award for shares of PNC common stock, as adjusted to reflect the exchange ratio, and $379 million of cash was paid to certain National City warrant holders.

The description of the Merger Agreement does not purport to be complete and is qualified in its entirety by reference to the Merger Agreement, a copy of which was attached as Exhibit 2.1 to the Current Report on Form 8-K filed by PNC on October 30, 2008 and is incorporated herein by reference.

The representations and warranties of each party set forth in the Merger Agreement have been made solely for the benefit of the other party to the Merger Agreement. In addition, such representations and warranties (a) have been qualified by confidential disclosures made to the other party in connection with the Merger Agreement, (b) do not survive consummation of the Merger, (c) are subject to the materiality standard contained in Article VII of the Merger Agreement which may differ from what may be viewed as material by investors, (d) were made only as of the date of the Merger Agreement or such other date as is specified in the Merger Agreement, and (e) may have been included in the Merger Agreement for the purpose of allocating risk between PNC and National City rather than establishing matters as facts. Accordingly, the Merger Agreement is incorporated into this filing only to provide investors with information regarding the terms of the Merger Agreement, and not to provide investors with any other factual information regarding the parties or their respective businesses. The Merger Agreement should not be read alone, but should instead be read in conjunction with the other information regarding the companies and the Merger contained in, or incorporated by reference into, the proxy statement/prospectus filed on November 24, 2008 and included as part of the Registrant's registration statement on Form S-4 (Registration No. 333-155248) filed with the Securities and Exchange Commission (the "SEC") on November 10, 2008 and amended on November 20, 2008 and twice amended on November 21, 2008 in connection with the merger, as well as in the Forms 10-K, Forms 10-Q and other filings that each of PNC and National City make with the SEC.

**Item 2.03. Creation of a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement of a Registrant.**

Upon the closing of the Merger, PNC entered into supplemental indentures in respect of the following notes of National City (collectively, the "National City Notes"):

-2-

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

THE PNC FINANCIAL SERVICES GROUP, INC.
(Registrant)

Date: January 2, 2009

By: /s/ Samuel R. Patterson
Name: Samuel R. Patterson
Title: Controller

-6-

EX-2.1 2 merger.htm AGREEMENT AND PLAN OF MERGER

EXHIBIT 2.1

# AGREEMENT AND PLAN OF MERGER

by and between

**THE PNC FINANCIAL SERVICES GROUP, INC.**

and

**NATIONAL CITY CORPORATION**

Dated as of October 24, 2008

## TABLE OF CONTENTS

Page

### ARTICLE I

### THE MERGER

| | | |
|---|---|---|
| 1.1 | The Merger | 1 |
| 1.2 | Effective Time | 2 |
| 1.3 | Effects of the Merger | 2 |
| 1.4 | Conversion of Stock | 2 |
| 1.5 | Stock Options | 3 |
| 1.6 | Company Restricted Shares | 4 |
| 1.7 | Company Deferred Shares | 4 |
| 1.8 | Other Stock-Based Awards | 4 |
| 1.9 | Articles of Incorporation and By-Laws of the Surviving Company | 4 |
| 1.10 | Directors and Officers | 4 |
| 1.11 | Company Preferred Stock | 5 |
| 1.12 | Effect on Purchaser Stock; Required Purchaser Action | 5 |

### ARTICLE II

### DELIVERY OF MERGER CONSIDERATION

| | | |
|---|---|---|
| 2.1 | Exchange Agent | 5 |
| 2.2 | Deposit of Merger Consideration | 5 |
| 2.3 | Delivery of Merger Consideration | 5 |

### ARTICLE III

### REPRESENTATIONS AND WARRANTIES OF COMPANY

| | | |
|---|---|---|
| 3.1 | Corporate Organization | 8 |
| 3.2 | Capitalization | 8 |
| 3.3 | Authority; No Violation | 10 |
| 3.4 | Consents and Approvals | 11 |
| 3.5 | Reports | 11 |
| 3.6 | Financial Statements | 12 |
| 3.7 | Broker's Fees | 13 |
| 3.8 | Absence of Changes | 13 |
| 3.9 | Compliance with Applicable Law | 14 |
| 3.10 | State Takeover Laws | 14 |

-i-

**AGREEMENT AND PLAN OF MERGER**, dated as of October 24, 2008 (this "Agreement"), by and between National City Corporation, a Delaware corporation ("Company"), and The PNC Financial Services Group, Inc., a Pennsylvania corporation ("Purchaser").

## RECITALS

A. The Boards of Directors of Company and Purchaser have determined that it is in the best interests of their respective companies and their stockholders to consummate the strategic business combination transaction provided for in this Agreement in which Company will, on the terms and subject to the conditions set forth in this Agreement, merge with and into, Purchaser (the "Merger"), with Purchaser as the surviving company in the Merger (sometimes referred to in such capacity as the "Surviving Company").

B. As an inducement and condition to the entrance of Purchaser into this Agreement, Company is granting to Purchaser an option pursuant to a stock option agreement in the form set forth in Exhibit A (the "Option Agreement").

C. The parties intend the Merger to be treated as a reorganization under Section 368(a) of the Internal Revenue Code of 1986 (the "Code"), and intend for this Agreement to constitute a "plan of reorganization" within the meaning of the Code.

D. The parties desire to make certain representations, warranties and agreements in connection with the Merger and also to prescribe certain conditions to the Merger.

NOW, THEREFORE, in consideration of the mutual covenants, representations, warranties and agreements contained in this Agreement, the parties agree as follows:

## ARTICLE I

## THE MERGER

1.1 The Merger. (a) Subject to the terms and conditions of this Agreement, in accordance with the General Corporation Law of the State of Delaware (the "DGCL") and the Pennsylvania Business Corporation Law (the "PBCL"), at the Effective Time, Company shall merge with and into Purchaser. Purchaser shall be the Surviving Company in the Merger and shall continue its existence as a corporation under the laws of the Commonwealth of Pennsylvania. As of the Effective Time, the separate corporate existence of Company shall cease.

(b) Subject to the consent of Company, which shall not be unreasonably withheld or delayed, Purchaser may at any time change the method of effecting the combination (including by providing for the merger of a wholly owned subsidiary of Purchaser into Company) if and to the extent requested by Purchaser; *provided, however*, that no such change or amendment shall (i) alter or change the amount or kind of the Merger Consideration to be received by the stockholders of the Company, (ii) adversely affect the tax consequences of the Merger to stockholders of Company or the Tax treatment of either party pursuant to this

1

Agreement or (iii) impede or materially delay consummation of the transactions contemplated by this Agreement.

1.2  Effective Time. Subject to the terms and conditions of this Agreement, on or before the Closing Date, the parties shall execute, and Purchaser shall cause to be filed with the Department of State of the Commonwealth of Pennsylvania, articles of merger as provided in Sections 1926 and 1927 of the PBCL (the "Articles of Merger") and Purchaser will cause a certificate of merger to be filed with the Secretary of State of the State of Delaware as provided in Section 252 of the DGCL. The Merger shall become effective at such time as the Articles of Merger have been filed, or such other time as may be specified therein. The term "Effective Time" shall be the date and time when the Merger becomes effective as set forth in the Articles of Merger.

1.3  Effects of the Merger. At and after the Effective Time, the Merger shall have the effects set forth in the DGCL and the PBCL.

1.4  Conversion of Stock. At the Effective Time, by virtue of the Merger and without any action on the part of Purchaser, Company or the holder of any of the following securities:

(a)  At the Effective Time, each share of common stock, par value $5.00 per share, of Purchaser ("Purchaser Common Stock") issued and outstanding immediately prior to the Effective Time shall continue to be one validly issued, fully paid and nonassessable share of common stock, par value $5.00, of the Surviving Company.

(b)  All shares of common stock, par value $4.00 per share, of Company issued and outstanding immediately prior to the Effective Time (the "Company Common Stock") that are owned by Company or Purchaser (other than shares of Company Common Stock held in trust accounts, managed accounts, mutual funds and the like, or otherwise held in a fiduciary or agency capacity, that are beneficially owned by third parties (any such shares, "Trust Account Common Shares") and other than shares of Company Common Stock held, directly or indirectly, by Company or Purchaser in respect of a debt previously contracted (any such shares, "DPC Common Shares")) shall be cancelled and shall cease to exist and no stock of Purchaser or other consideration shall be delivered in exchange therefor.

(c)  Subject to Section 1.4(e), each share of the Company Common Stock, including Trust Account Common Shares and DPC Common Shares, but excluding all other shares of Company Common Stock owned by Company or Purchaser, shall be converted, in accordance with the procedures set forth in Article II, into the right to receive 0.0392 (the "Exchange Ratio") of a share of Purchaser Common Stock of Purchaser (the "Merger Consideration").

(d)  All of the shares of Company Common Stock converted into the right to receive the Merger Consideration pursuant to this Article I shall no longer be outstanding and shall automatically be cancelled and shall cease to exist as of the Effective Time, and each certificate previously representing any such shares of Company Common Stock (each, a "Certificate") shall thereafter represent only the right to receive the Merger Consideration and/or

2

**IN WITNESS WHEREOF**, Company and Purchaser have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

THE PNC FINANCIAL SERVICES GROUP, INC.

By: /s/ James E. Rohr
    Name: James E. Rohr
    Title: Chairman and Chief Executive Officer


NATIONAL CITY CORPORATION

By: /s/ Peter E. Raskind
    Name: Peter E. Raskind
    Title: Chairman, President and Chief Executive Officer

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 10-K

☑ Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
For the fiscal year ended December 31, 2007

Commission File Number 1-10074

**NATIONAL CITY CORPORATION**

(Exact Name of Registrant as Specified in Its Charter)

| Delaware | 34-1111088 |
|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| 1900 East Ninth Street, Cleveland, Ohio | 44114-3484 |
| (Address of Principal Executive Offices) | (ZIP Code) |

Registrant's telephone number, including area code: 216-222-2000
Securities registered pursuant to Section 12(b) of the Act:

| Title of Class | Name of Each Exchange on Which Registered |
|---|---|
| National City Corporation Common Stock, $4.00 Per Share | New York Stock Exchange |
| 9.875% Fixed-to-Floating Rate Non-Cumulative Preferred Stock, Series F | New York Stock Exchange |
| 12.000% Fixed-to-Floating Rate Normal APEX | New York Stock Exchange |
| 8.000% Trust Preferred Securities (issued by National City Capital Trust IV) | New York Stock Exchange |
| 6.625% Trust Preferred Securities (issued by National City Capital Trust III) | New York Stock Exchange |
| 6.625% Trust Preferred Securities (issued by National City Capital Trust II) | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: none

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☑ NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. YES ☐ NO ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☑ NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑    Accelerated filer ☐    Non-accelerated filer ☐ (Do not check if a smaller reporting company)    Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). YES ☐ NO ☑

The aggregate market value of the registrant's outstanding voting common stock held by nonaffiliates on June 30, 2007, determined using a per share closing price on that date of $33.32, as quoted on the New York Stock Exchange, was $17,818,655,592.

The number of shares outstanding of each of the registrant's classes of common stock, as of December 31, 2007.

# NATIONAL CITY CORPORATION
## SUBSIDIARY LISTING

**December 31, 2007**

| | State or Jurisdiction under the law of which Organized |
|---|---|
| NAT CITY INVT FD NO. 3, LLC. | Ohio |
| NAT CITY INVT FD NO. 4, LLC. | Ohio |
| NAT CITY INVT FD NO. 5, LLC. | Ohio |
| NAT CITY INVT FD NO. 6, LLC. | Ohio |
| NAT CITY INVT FD NO. 7, LLC. | Ohio |
| NAT CITY INVT FD NO. 8, LLC. | Ohio |
| NAT CITY INVT FD NO. 9, LLC. | Ohio |
| NAT CITY INVT FD NO. 10, LLC. | Ohio |
| NatCity Investments, Inc. | Indiana |
| NatCity Trust Company of Delaware. | Delaware |
| National Capital Properties, Inc. (Inactive). | Kentucky |
| National City Abstract, LLC. | Pennsylvania |
| National City Bank. | United States |
| National City Business Credit, Inc. | Ohio |
| National City Canada, Inc. (Inactive). | United States |
| National City Capital Corporation. | Delaware |
| National City Capital Trust I (Inactive). | Delaware |
| National City Center, LLC. | Ohio |
| National City Commercial Capital Company, LLC. | Indiana |
| National City Commercial Capital Corporation (Canada). | Canada |
| National City Commercial Leasing, Inc. | Ohio |
| National City Community Development Corporation. | Ohio |
| National City Credit Corporation. | Ohio |
| National City DND, Inc. | Delaware |
| National City Energy Capital LLC. | Ohio |
| National City Equity Partners, Inc. | Delaware |
| National City Equity Partners, LLC. | Ohio |
| National City Global Finance Corporation. | Ohio |
| National City Insurance Agency of Pennsylvania, Inc. | Pennsylvania |
| National City Insurance Group, Inc. | Michigan |
| National City Investment Company-Nevada, Inc. | Nevada |
| National City Mortgage Capital LLC. | Delaware |
| National City Mortgage Co. | Ohio |
| National City Mortgage Insurance Company, Inc. | Hawaii |
| National City Mortgage Loan Trust 2005-1. | New York |
| National City NMTC No. 1, LLC. | Ohio |
| National City NMTC No. 2, LLC. | Ohio |
| National City NMTC No. 3, LLC. | Ohio |
| National City NMTC No. 4, LLC. | Ohio |
| National City NMTC No. 5, LLC. | Ohio |
| National City NMTC No. 6, LLC. | Ohio |
| National City NMTC No. 7, LLC. | Ohio |
| National City NMTC No. 8, LLC. | Ohio |
| National City NMTC No. 9, LLC. | Ohio |
| National City NMTC No. 10, LLC. | Ohio |
| National City NMTC No. 11, LLC. | Ohio |
| National City NMTC No. 12, LLC. | Ohio |
| National City NMTC No. 13, LLC. | Ohio |
| National City NMTC No. 14, LLC. | Ohio |
| National City NMTC No. 15, LLC. | Ohio |
| National City NMTC No. 16, LLC. | Ohio |